UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHRISTIAN SWAIN, et al., | Case No. 3:25-cv-05889-TMC |
| Plaintiffs, | ORDER GRANTING MOTION TO DISMISS |
| v. | |
| ESSEX MORTGAGE (D/B/A DATA INC), | |
| Defendant. | |

Before the Court is Defendant Essex Mortgage's ("Essex") motion to dismiss claims brought by Plaintiffs Christian and Kia Swain. Dkt. 24. For the reasons set forth below, the Court GRANTS Essex's motion and DISMISSES all claims without prejudice. Because defects in the complaint may be cured by amendment, the Court GRANTS Plaintiffs leave to amend their complaint no later than February 17, 2026. The Court DENIES AS MOOT Plaintiffs' motion for a preliminary injunction. Dkts. 29, 30.

## I.   BACKGROUND

This case concerns two mortgages on Plaintiffs' home in Vancouver, Washington. Dkt. 10 ¶ 6. Plaintiffs allege that Essex has been unlawfully collecting payments and furnishing credit information on both loans, even though non-party CMG Mortgage, Inc. ("CMG") is listed as the beneficiary of record on both deeds of trust and "[n]o assignment of either deed of trust

ORDER GRANTING MOTION TO DISMISS - 1

has ever been recorded." *Id*. ¶¶ 6–9. Plaintiffs allege that CMG has admitted any transfer was handled only within the Mortgage Electronic Registration System ("MERS")[1] and is not recorded in the public records of Clark County, where their home sits. *Id*. ¶ 12.

Plaintiffs claim that Essex is improperly "act[ing] as a debt collector without legal interest or servicing rights, using false and misleading representations to collect payments" in violation of the Fair Debt Collection Practices Act ("FDCPA"). *Id*. ¶¶ 19–20 (citing 15 U.S.C. §§ 1692e, 1692f). Plaintiffs also allege that Essex reported Plaintiffs' credit inaccurately and without standing to do so, violating the Fair Credit Reporting Act ("FCRA"). *Id*. ¶¶ 17–18 (citing 15 U.S.C. § 1681s-2). Lastly, Plaintiffs bring claims under the Real Estate Settlement Procedures Act ("RESPA") for Essex's failure "to timely acknowledge and fully respond" to Plaintiffs' qualified written requests ("QWRs") on this issue. *Id*. ¶¶ 15–16 (citing 12 U.S.C. § 2605; 12 C.F.R. § 1024.36).

## II.    PROCEDURAL HISTORY

Plaintiffs initially filed a motion for a temporary restraining order ("TRO") on September 30, 2025, which the Court denied because Plaintiffs had not yet filed a complaint or satisfied several other requirements for opening a case. Dkts. 1, 7. Plaintiffs filed their complaint on October 8, 2025. Dkt. 10. On October 28, Plaintiffs renewed their request for a TRO, which the Court denied on October 30. Dkts. 19, 28. Plaintiffs moved for reconsideration of the TRO denial that same day. Dkt. 29. Then, on November 3, they asked the Court to convert the motion for reconsideration to a motion for preliminary injunction. Dkt. 30.

---

[1] MERS is an electronic registry "for tracking ownership of mortgage-related debt" which "allows its users to avoid the cost and inconvenience of the traditional public recording system." *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 88, 94–95, 285 P.3d 34 (2012).

ORDER GRANTING MOTION TO DISMISS - 2

On October 29, Essex moved to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. 24. Plaintiffs responded that same day. Dkt. 25. Essex replied on November 7, 2025. Dkt. 35. Essex moved to continue case deadlines pending a ruling on its motion to dismiss, and the Court granted the continuance. Dkts. 36, 39.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) motions may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). To survive a Rule 12(b)(6) motion, the complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party," *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014), but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks and alteration omitted).

ORDER GRANTING MOTION TO DISMISS - 3

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV.    JUDICIAL NOTICE

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). When "matters outside the pleading are presented to and not excluded by the court," a motion to dismiss "converts into a motion for summary judgment under Rule 56." *Id.* (quoting Fed. R. Civ. P. 12(d)). "Then, both parties must have the opportunity 'to present all the material that is pertinent to the motion.'" *Id.* (quoting Fed. R. Civ. P. 12(d)).

This rule has two exceptions. *Id.* First, a court may take judicial notice of facts "not subject to reasonable dispute" because they either: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The second exception is "the incorporation-by-reference doctrine." *Khoja*, 899 F.3d at 998. This rule allows courts to consider a document that is not attached to the complaint if the complaint "necessarily relies" on it and "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Although these two exceptions are "often conflated," they are "distinct" from one another, as a court can consider a document that is incorporated by reference into a pleading without taking judicial notice of it. *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1061 (C.D. Cal. 2012).

Essex requests judicial notice of (1) the deeds of trust to Plaintiffs' home; (2) Essex's webpage listing its designated address for receiving QWRs; and (3) a Washington state court order dismissing Plaintiffs' case to quiet title against CMG. Dkt. 22. Plaintiffs have not opposed

ORDER GRANTING MOTION TO DISMISS - 4

the request. The Court GRANTS IN PART and DENIES IN PART Essex's request for judicial notice.

First, the Court DENIES AS MOOT Essex's request for judicial notice of the deeds of trust. *See id.* at 4–34. These documents are incorporated by reference into the complaint and may be considered without judicial notice. *See Gammell*, 905 F. Supp. 2d at 1061. The complaint refers to the deeds and includes an exhibit detailing the recording date, loan amount, and lender name on each deed matching those provided by Essex. Dkt. 10 ¶¶ 6–7; *compare* Dkt. 22 at 4–34, *with* Dkt. 9-1. The argument that CMG never modified these deeds nor recorded a new instrument "transferring beneficial interest" to Essex is the primary thrust of the complaint. Dkt. 10 ¶ 7. The Court considers these documents in ruling on Essex's motion to dismiss.[2]

Second, the Court DENIES judicial notice of Essex's webpage. "Information on websites, especially a party's website, is often not considered an appropriate subject of judicial notice." *Robinson v. Bank of Am., N.A.*, No. 21-CV-00110-AJB-DEB, 2022 WL 837073, at *4 (S.D. Cal. Mar. 21, 2022) (denying judicial notice of bank's webpage displaying its designated address for QWRs). "[P]rivate corporate websites, particularly when describing their own business, generally are not the sorts of sources whose accuracy cannot reasonably be questioned." *Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F. Supp. 3d 755, 763 (C.D. Cal. 2015) (quoting *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007), *as amended* (Nov. 20,

---

[2] For the same reasons, the Court considers an email correspondence between Essex and Plaintiffs that is attached to the TRO. Dkt. 1-5. The emails are referenced in the complaint and form the basis for Plaintiffs' RESPA claims in Count I. Dkt. 10 ¶¶ 9–11, 15–16; *see Lilly v. Univ. of Cal.-San Diego*, No. 21-CV-1703 TWR (MSB), 2023 WL 5444776, at *7 (S.D. Cal. Aug. 23, 2023) (citing *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012)) (finding that an email was incorporated by reference into a pleading because the pleading mentioned the email several times, and the email "form[ed] part of the basis of Plaintiffs' claims").

ORDER GRANTING MOTION TO DISMISS - 5

2007)). The webpage is also not incorporated by reference because it is not mentioned in the complaint.

Third, the Court GRANTS judicial notice of the Clark County Superior Court's order of dismissal in *Swain v. CMG Mortgage*, Docket No: 25-2-01947-06; *see* Dkt. 22 at 39–40. The Court takes judicial notice of this document as a matter of public record. As a Clark County, Washington Superior Court order, it is "readily verifiable and therefore, the proper subject of judicial notice." *McReynolds v. Washington*, No. 19-5708 RJB-DWC, 2020 WL 1695449, at *5 (W.D. Wash. Apr. 7, 2020) (quoting *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006)). The Court takes judicial notice of the Clark County order "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426–27 (3d Cir. 1999)).

## V.    DISCUSSION

### A.    Count I: RESPA

Plaintiffs claim that "Essex failed to timely acknowledge and fully respond to Plaintiffs' QWRs" in violation of RESPA. Dkt. 10 ¶¶ 15–16 (citing 12 U.S.C. § 2605; 12 C.F.R. § 1024.36).

"RESPA requires loan servicers like [Essex] to respond to certain correspondence (i.e., QWRs) from borrowers." *Loewy v. CMG Mortg., Inc.*, 385 F. Supp. 3d 1083, 1086 (S.D. Cal. 2019) (citing 12 U.S.C. § 2605(e)(1)(A), (e)(2)). Once received, a loan servicer has 30 business days to respond to a QWR—extended an additional 15 days if the servicer notifies the borrower of the extension and its reasons for delay. *Id*. (citing 12 U.S.C. § 2605(e)(2), (e)(4)).

ORDER GRANTING MOTION TO DISMISS - 6

Essex asks the Court to dismiss Plaintiffs' RESPA claim because Plaintiffs' communications to Essex (1) were not sent to Essex's designated address for receiving QWRs and (2) did not relate to the servicing of Plaintiffs' loans. Dkt. 24 at 4–6.

First, "[i]f a servicer establishes a RESPA address and notifies a borrower of it, a borrower has a QWR claim only if she sent the QWR to that address." *Choudhuri v. Specialised Loan Servicing*, No. 3:19-CV-04198-JD, 2022 WL 1188865, at *2 (N.D. Cal. Apr. 20, 2022); *see* 12 C.F.R. § 1024.36(b) ("A servicer may, by written notice provided to a borrower, establish an address that a borrower *must* use to request information.") (emphasis added). Plaintiffs do not indicate whether they sent any requests to Essex's designated mailing address, instead referring to email correspondence with Essex in mid-to-late 2025. Dkt. 10 ¶ 9; *see* Dkt. 9-3 (summary of email correspondence); Dkt. 1-5 (emails between Plaintiffs and Essex). "Emailing a QWR is not sufficient because an email address is not the established RESPA address." *Choudhuri*, 2022 WL 1188865, at *2.

Second, even assuming Essex failed to notify Plaintiffs of its designated RESPA address, Plaintiffs' RESPA claim fails because their email inquiries did not seek information related to the servicing of their loan.

"RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a [QWR] and respond accordingly." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012) (quoting *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011)). However, a communication to a loan servicer constitutes a QWR and requires a response only when it "(1) reasonably identifies the borrower's name and account, (2) either states the borrower's 'reasons for the belief . . . that the account is in error' or 'provides sufficient detail to the servicer regarding other information sought by the borrower,' and (3) seeks 'information relating to the servicing of [the] loan.'" *Id.* (alterations in original) (quoting

ORDER GRANTING MOTION TO DISMISS - 7

12 U.S.C. § 2605(e)(1)(A)–(B)).[3] "RESPA defines the term 'servicing' to encompass only 'receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . , and making the payments of principal and interest and such other payments.'" *Id*. (quoting 12 U.S.C. § 2605(i)(3)).[4] In contrast, "letters challenging only a loan's validity or its terms are not [QWRs] that give rise to a duty to respond under § 2605(e)." *Id*. at 667.

Plaintiffs' emails challenged Essex's status as the loan servicer and its authority to collect payments. *See, e.g.*, Dkt. 1-5 at 17 (asserting that, despite "never produc[ing] a servicing agreement with any legitimate owner or investor in either loan," Essex continued to collect payments, assess late fees, send monthly statements, and furnish credit data). Much like Plaintiffs' allegations here, their emails claimed Essex had no servicing authority because "[n]o assignment of deed of trust ha[d] been recorded for either loan" and CMG remained the lienholder of record. *Id*. at 30. Plaintiffs requested multiple documents—such as a servicing agreement, proof of ownership, and MERS history and designations—related to that issue. *Id*. at 17–18, 26, 31.

"Assignments and transfers do not fall under RESPA's definition of 'servicing.'" *Sparks-Magdaluyo v. New Penn Fin., LLC*, No. 16-CV-04223-MEJ, 2017 WL 5992128, at *6 (N.D. Cal. Dec. 4, 2017). These issues "concern 'transactions and circumstances surrounding a loan's

---

[3] Although often a "meaningless" distinction, the first two requirements are needed for a communication to constitute a QWR under § 2605(e)(1)(B), whereas the third requirement is necessary for that communication to require a response under § 2605(e)(1)(A). *Medrano*, 704 F.3d at 666 n.4.

[4] "[A] QWR typically seeks information related to accounting and billing disputes, such as unauthorized charges, charging wrong payments, or excessive late charges." *McCorgary v. Ocwen Loan Servicing, LLC*, No. 817CV1120DOCKSX, 2017 WL 8230032, at *4 (C.D. Cal. Sept. 11, 2017).

ORDER GRANTING MOTION TO DISMISS - 8

origination' and are not proper subjects for a QWR." *Id*. (quoting *Medrano*, 704 F.3d at 666–67); *see also McCorgary v. Ocwen Loan Servicing, LLC*, No. 817CV1120DOCKSX, 2017 WL 8230032, at *4 (C.D. Cal. Sept. 11, 2017) (concluding that document requests "pertaining to the loan's origination, its assignments and transfers, and its accompanying deed of trust" did not require a response under RESPA).

To the extent Plaintiffs' emails constituted QWRs, they did not seek information related to the servicing of either loan. Because Essex was not required by RESPA to respond to these inquiries, the Court GRANTS Essex's motion to dismiss with respect to Count I.

## B.    Count II: FCRA

The FCRA was enacted "[t]o ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy," and it imposes obligations on furnishers that provide credit information to consumer reporting agencies ("CRAs").[5] *Harris v. Experian Info. Sols., Inc.*, No. 16-CV-02162-BLF, 2017 WL 1354778, at *2 (N.D. Cal. Apr. 13, 2017) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)); 15 U.S.C. § 1681a(f) (defining CRAs).

"To state a claim under section 1681s-2(b) of the FCRA against a furnisher like [Essex], Plaintiff[s] must plead facts showing an inaccuracy exists in [their] credit report that is either 'patently incorrect' or materially misleading." *Naimi-Yazdi v. JPMorgan Chase Bank, N.A.*, No. 5:21-CV-04390-EJD, 2022 WL 2307068, at *2 (N.D. Cal. June 27, 2022) (quoting *Shaw v. Experian Info. Sols. Inc.*, 891 F.3d 749, 756 (9th Cir. 2018)); *see Gorman*, 584 F.3d at 1163 (a report can be "incomplete or inaccurate" under the FCRA if it is "patently incorrect" or

[5] Although the FCRA does not define the meaning of the term "furnisher," the Ninth Circuit has described them simply as the "sources that provide credit information to the CRAs." *Rogers v. JPMorgan Chase Bank, N.A.*, No. C11-1689JLR, 2012 WL 2190900, at *8 (W.D. Wash. June 13, 2012) (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009)).

ORDER GRANTING MOTION TO DISMISS - 9

"misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions" (quoting *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998))). "[I]f a plaintiff cannot establish that a credit report contained an actual inaccuracy, then the plaintiff's claims fail as a matter of law." *Harris*, 2017 WL 1354778, at *3 (quoting *Doster v. Experian Info. Sols., Inc.*, No. 16-CV-04629-LHK, 2017 WL 264401, at *3 (N.D. Cal. Jan. 20, 2017)).

Plaintiffs fail to identify any credit information furnished by Essex that was incorrect, let alone materially misleading. Plaintiffs argue Essex violated the FCRA by "furnish[ing] and verif[ying] inaccurate credit data after notice of dispute and without lawful authority." Dkt. 10 ¶ 17. But Plaintiffs do not support their conclusory assertion that Essex "verified inaccurate credit data," nor do they explain what "lawful authority" is required by section 1681s-2(b) that Essex did not possess.[6] Plaintiffs' inability to describe any inaccuracies dooms their FCRA claim. *See Shahadi v. Navy Fed. Credit Union*, No. CV-25-03363-PHX-SMB, 2025 WL 2879751, at *3 (D. Ariz. Oct. 9, 2025) ("Plaintiff merely states 'Defendant reported false information to credit bureaus.' This statement is conclusory and fails to inform Defendant which information is patently incorrect or misleading." (citation omitted)).

The Court therefore GRANTS Essex's motion to dismiss with respect to Count II.

---

[6] Plaintiffs argue that Essex's reliance on the Clark County Superior Court's order of dismissal means Essex is bound by judicial estoppel to rely "on CMG's recorded-lienholder status" and cannot assert "any alternative ownership or servicing theory." Dkt. 25 at 3; Dkt. 27. It is unclear how judicial estoppel—a doctrine that binds a party to a previous, inconsistent position that the court relied on, *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001)—applies here, and Plaintiffs do not explain how any purported contradictions indicate a violation under any of their claims.

### C.    Count III: FDCPA

Plaintiffs' third and final claim alleges "Essex acted as a debt collector without legal interest or servicing rights, using false and misleading representations to collect payments" in violation of the FDCPA. Dkt. 10 ¶ 19 (citing 15 U.S.C. §§ 1692e, 1692f). Essex argues that (1) it is not a debt collector bound by the FDCPA and (2) even if it were, it did not violate the FDCPA. Dkt. 24 at 8–11.

The FDCPA bars a "debt collector" from (1) engaging in conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt"; (2) "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt"; or (3) "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §§ 1692d–f. The FDCPA's definition of debt collector "expressly *excludes* 'any person collecting or attempting to collect any debt owed or due . . . to the extent such activity . . . concerns a debt which was originated by such person [or] was not in default at the time it was obtained by such person.'" *Jackson v. MKRP LLC*, No. 2:25-CV-00973-LK, 2025 WL 3158071, at *2 (W.D. Wash. Nov. 12, 2025) (alterations in original) (quoting 15 U.S.C. § 1692a(6)(F)). In other words, "creditors to whom a debt is originally owed are not 'debt collectors' under the FDCPA when they collect on their own behalf." *Id.* (citing *Afewerki v. Anaya Law Grp.*, 868 F.3d 771, 774 n.1 (9th Cir. 2017)).

First, Essex is not a debt collector because it began collecting payments prior to Plaintiffs' default. The complaint does not allege Essex only began servicing the loan after default, instead suggesting that Essex collected prior to default. Dkt. 10 ¶¶ 13–14. Further, Plaintiffs' response to the motion to dismiss indicates they stopped paying their loans *because of the same purported ownership issues* that drive Plaintiffs' case here. *See* Dkt. 25 at 4 ("Plaintiffs have never missed or been late on a primary mortgage payment until May 2025, when they

ORDER GRANTING MOTION TO DISMISS - 11

discovered those payments were being routed to unknown parties with no recorded interest or verified legal standing.").

Second, even assuming Essex was a debt collector, Plaintiffs have not responded to Essex's arguments that the complaint does not allege an FDCPA violation. Plaintiffs do not explain how the FDCPA would require Essex to furnish a servicing agreement or a written assignment effectuating transfer. Plaintiffs' conclusory assertion that Essex made "false and misleading representations to collect payments" is insufficient to survive a motion to dismiss. Dkt. 10 ¶ 19.

Because Plaintiffs have not alleged that Essex was a debt collector who violated the FDCPA, the Court GRANTS Essex's motion to dismiss with respect to Count III. [7]

## D.    Leave to amend

"Unless it is absolutely clear that no amendment can cure the defect[s]" of a complaint, a self-represented litigant is entitled to notice of problems with the complaint that would result in the case being dismissed, and an opportunity to amend before dismissal of the action. *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). The Court is not required to grant an opportunity to amend the complaint "where the amendment would be futile or where the amended complaint would be subject to dismissal." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (citation omitted).

There is a possibility that Plaintiffs may cure their complaint by adding more factual allegations. The Court therefore GRANTS Essex's motion to dismiss for failure to state a claim

---

[7] Count IV of the complaint is a request for declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02. Dkt. 10 ¶¶ 21–22. A request for such relief does not constitute an independent claim. *Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d 1130, 1139 (W.D. Wash. 2013) ("The Declaratory Judgment Act creates only a remedy, not a cause of action."). Because Plaintiffs' other claims fail and "the court cannot grant declaratory relief in the absence of a substantive cause of action," the Court dismisses this count as well. *Id.*

ORDER GRANTING MOTION TO DISMISS - 12

without prejudice and with leave to amend. Plaintiffs will have until February 17, 2026 to file an amended complaint.

**E.    Motion for a preliminary injunction**

On October 30, 2025, Plaintiffs moved for reconsideration of the Court's previous denial of their motion for a TRO, attaching an October 22 "Default and Acceleration Notice" from Essex threatening foreclosure. Dkts. 29, 29-1. On November 3, Plaintiffs asked to convert their motion for reconsideration into one for a preliminary injunction. Dkt. 30.

Because the Court has dismissed all of Plaintiffs' claims, it DENIES Plaintiffs' motion for reconsideration and motion for a preliminary injunction as MOOT.[8]

**VI.    CONCLUSION**

For the foregoing reasons, the Court ORDERS as follows:

- Essex's motion to dismiss (Dkt. 24) is GRANTED. All claims are DISMISSED without prejudice.

- Plaintiffs are GRANTED leave to file an amended complaint no later than February 17, 2026. If Plaintiffs do not file an amended complaint, the case will be dismissed without prejudice.

- Plaintiffs' motion for reconsideration and motion for a preliminary injunction (Dkts. 29, 30) are DENIED AS MOOT.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

---

[8] In their motion for a preliminary injunction, Plaintiffs argue that Essex's "unrecorded assignments and contradictory beneficiary claims" violated Washington state law. Dkt. 30 at 2 (citing RCW 61.24). To the extent Plaintiffs intend to add a state law claim, they may include it in any amended complaint that they file.

ORDER GRANTING MOTION TO DISMISS - 13

Dated this 26th day of January, 2026.

_____
Tiffany M. Cartwright
United States District Judge

ORDER GRANTING MOTION TO DISMISS - 14